**In re David V. DUDLEY and Anne M. Dudley, Debtors.**

**W. Clarkson McDow, Jr. United States Trustee for Region IV, Movant.**

v.

**David V. Dudley and Anne M. Dudley, Respondents.**

No. 08–71561.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

June 17, 2009.

Garren Robert Laymon, William J. Charboneau, Magee Foster Goldsteing & Sayers PC, Roanoke, VA, for Debtors.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court is the Motion for Summary Judgment filed by David V. Dudley and Anne M. Dudley (the "Debtors") in response to the United States Trustee's Motion to Dismiss their Chapter 7 case pursuant to 11 U.S.C. § 707(b)(1). The U.S. Trustee seeks dismissal of the Debtors' Chapter 7 case for abuse and alleges that the presumption of abuse arises under 11 U.S.C. § 707(b)(2). The Debtors argue that 11 U.S.C. § 707(b) does not apply to cases converted to Chapter 7 from another chapter of the Bankruptcy Code and move for summary judgment on that ground.

### JURISDICTION

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

The facts in this matter are not in dispute. The Debtors filed a voluntary Chapter 13 petition with this Court on August 18, 2008. On Official Form 22C, the Debtors calculated their monthly disposable income to be ($1,862.99). Their net monthly income is $9,715.53, but their deductions from income total $11,578.42. The Debtors included in their deductions the average monthly payment of $5,221.93 for debts secured by their home. To reach this figure, the Debtors added the $1,530.67 payment on a note secured by their residence located at 410 Saddlewood Drive, Wirtz, Virginia and two payments of $2,747.08 and $944.18 for notes secured by the Debtors' second home located at 469 Woods Edge Drive, Rocky Mount, Virginia

(the "Woods Edge Secured Debt"). The Debtors filed a Chapter 13 plan on August 18, 2008 (the "Plan"). The Debtors indicated an intent to surrender the Woods Edge Property in paragraph 3(c) of their Plan and did not include their payments on the Woods Edge Secured Debt on their Schedule J expenses.

The Chapter 13 Trustee moved to dismiss or convert the Debtor's case pursuant to 11 U.S.C. § 1307 on September 18, 2008. The Trustee asserted that the Debtors scheduled unreasonably high, unnecessary expenses on their Schedule J and incorrectly deducted payments on the Woods Edge Secured Debt from their net disposable income on Form 22C. In response, the Debtors filed a motion to convert their case to Chapter 7 on October 8, 2008. The 11 U.S.C. § 341(a) meeting of creditors in the Chapter 7 case was held on November 14, 2008.

On December 15, 2008, the U.S. Trustee filed a motion to dismiss the case pursuant to 11 U.S.C. § 707(b)(1) as an abuse of Chapter 7. The U.S. Trustee alleged that the presumption of abuse arises pursuant to § 707(b)(2) because, had the Debtors properly calculated their monthly disposable income, their Form 22A would reflect that they have $2,113.01 in monthly disposable income to pay creditors $126,780.60 over the course of a sixty-month Chapter 13 plan. On January 9, 2009, the Debtors objected to the U.S. Trustee's motion on the grounds that § 707(b) does not apply to cases converted from Chapter 13 to Chapter 7. This Court heard the U.S. Trustee's Motion to Dismiss on March 10, 2009 and took the matter under advisement.

### ISSUE

This Court must determine whether 11 U.S.C. § 707(b) applies to cases converted to Chapter 7 from another chapter of the Bankruptcy Code.

### DISCUSSION ON APPLICABILITY OF § 707(b)

In general, 11 U.S.C. § 707(b) allows a bankruptcy court to dismiss or convert a Chapter 7 case because the individual debtor has sufficient disposable income to fund a plan of reorganization in either Chapter 11 or 13. Section 707(b)(1) provides that the court may dismiss "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts" for abuse. 11 U.S.C.A § 707(b)(1) (West 2009).[1] The presumption of abuse arises if the debtor's total disposable income, as calculated in § 707(b)(2)(A), is above the minimum threshold set forth in § 707(b)(2)(A)(i) (the "Means Test"). *Id.* § 707(b)(2)(A).

 Resolution of the issue here turns on interpretation of the phrase "a case filed by an individual debtor under this chapter" in § 707(b)(1). Where the meaning of a statute is in dispute, the analysis begins with the language of the statute itself. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.*

---

1. Section 707(b)(1) provides in part:
 After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds the granting of relief would be an abuse of the provisions of this chapter.
 11 U.S.C.A. 707(b)(1) (West 2009).

(internal quotation marks and citations omitted). There are two narrow exceptions to the Plain Meaning Rule: (1) "when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd"; and (2) "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 265 (4th Cir. 2004) (citations omitted).

At the outset, this Court notes that there is no language in § 707(b)(1) that explicitly states that § 707(b) is applicable to cases converted by an individual debtor to Chapter 7. A persuasive argument can be made that the language as written is clearly confined to those cases "filed ... under this chapter," i.e., originally filed in Chapter 7. Adoption of this argument would determine the issue in favor of the Debtors. *See In re Fox*, 370 B.R. 639, 643 (Bankr.D.N.J.2007). Nevertheless, a greater number of published opinions at the district and bankruptcy court levels (the "majority courts") hold that § 707(b) applies to converted cases.[2]

## I. *The Plain Meaning of Section 707(b)(1).*

■ In determining the plain meaning of § 707(b)(1), primary canons of statu-tory interpretation aid this Court. First, "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 277 (4th Cir.2008) (internal quotation marks omitted) (*quoting Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S.Ct. 376, 380, 157 L.Ed.2d 333 (2003)). This is the "last antecedent doctrine."[3] Second, "courts should disfavor interpretations of statutes that render language superfluous." *Id.* at 278 (internal quotation marks omitted) (*quoting Witt v. United Cos. Lending Corp. (In re Witt)*, 113 F.3d 508, 512 (4th Cir.1997) (*quoting Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992))). Third, "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232, 127 S.Ct. 2411, 2417, 168 L.Ed.2d 112 (2007).

■ The U.S. Trustee argues that proper application of the last antecedent doctrine to the phrase "a case filed by an individual debtor under this chapter" in § 707(b)(1) requires that "under this chapter" modify "debtor." The U.S. Trustee cites *Justice v. Advanced Control Solutions, Inc. (In re Justice)*, No. 07–5231,

---

2. A majority of courts having considered the question hold that § 707(b) applies to cases converted to Chapter 7. *See Justice v. Advanced Control Solutions, Inc. (In re Justice)*, No. 07–5231, 2008 WL 4368668 (W.D.Ark. Sept.22, 2008); *In re Willis*, No. 08–41820, 2009 WL 1563575 (Bankr.W.D.Mo. June 2, 2009); *In re Kellett*, 379 B.R. 332 (Bankr. D.Or.2007); *In re Kerr*, Nos. 06–12302, 06–12881, 2007 WL 2119291 (Bankr.W.D.Wash. July 18, 2007); *In re Perfetto*, 361 B.R. 27 (Bankr.D.R.I.2007). The minority of published opinions hold that § 707(b) only applies to cases originally filed in Chapter 7. *See In re Ryder*, No. 07–40192, 2008 WL 3845246 (Bankr.N.D.Cal. Aug.18, 2008); *In re Miller*,

381 B.R. 736 (Bankr.W.D.Ark.2008); *In re Fox*, 370 B.R. 639 (Bankr.D.N.J.2007). The *Willis* court observed that "[i]nterestingly, both positions ostensibly rely on the 'plain language' of the statute and proclaim that their interpretation advances underlying bankruptcy policy goals." *Willis*, 2009 WL 1563575, at *2.

3. "The 'last antecedent' is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" 2A *Sutherland Statutory Construction* § 47:33 (7th ed.2008).

2008 WL 4368668 (W.D.Ark. Sept.22, 2008), which holds that because "under this chapter" modifies "debtor," any "individual debtor under this chapter" is subject to § 707(b) scrutiny. *Id.* at *4. The Debtors reply that applying the last antecedent doctrine as advocated by the U.S. Trustee renders the phrase "under this chapter" superfluous. The Debtors argue that proper application of the doctrine dictates that "under this chapter" modify "filed."

This Court agrees that reading "under this chapter" to modify "debtor" would render the phrase "under this chapter" superfluous. If "a case filed by an individual debtor under this chapter" applies to every individual case whether initially filed in or converted to Chapter 7, then "under this chapter" adds nothing as 11 U.S.C. § 103(b) already limits application of § 707(b) to only Chapter 7 cases. *See* 11 U.S.C.A. § 103(b) (West 2009).[4] Congress could have excluded the phrase "under this chapter" and achieved the same result.[5] Further, reading "under this chapter" to modify "filed" is consistent with the Fourth Circuit's reasoning in *Branigan v.*

*Bateman (In re Bateman)*, 515 F.3d 272 (4th Cir.2008). In *Bateman,* the Fourth Circuit applied the last antecedent doctrine to 11 U.S.C. § 1328(f)(2) and held that "the phrase 'during the 2–year period preceding the date of such order' in § 1328(f)(2) modifies the immediately preceding phrase 'filed under ...'" *Id.* at 278. Thus, "under this chapter" modifies "filed."

This Court next considers the meaning of "filed." The majority courts assert that a case is "filed" under the chapter in which the debtor is currently proceeding. The *Kerr* court illustrated the majority position in finding that "[w]hile ... cases [a]re initially *filed* under Chapter 13, [after conversion] they are ... *filed* under Chapter 7." *In re Kerr,* Nos. 06–12302, 06–12881, 2007 WL 2119291, at *3 (Bankr.W.D.Wash. July 18, 2007).[6] The minority courts believe that "filed" refers to the initial filing of a petition in bankruptcy. *See In re Miller,* 381 B.R. 736, 741 (Bankr.W.D.Ark. 2008). The *Fox* court pointed to the consistent use of "filed" and "filing" in 11 U.S.C. §§ 342(d),[7] 707(b)(3),[8] 707(b)(4)(A),[9]

---

**4.** Section 103(b) provides that "[s]ubchapters I and II of chapter 7 of this title apply only in a case under such chapter." 11 U.S.C.A. § 103(b) (West 2009). Section 707 is in subchapter I of Chapter 7.

**5.** If "under this chapter" was eliminated, the hypothetical § 707(b)(1) would read in part: "After notice and a hearing, the court ... may dismiss a case filed by an individual debtor whose debts are primarily consumer debts...." (Debtors' Reply Mem. 4.)

**6.** The *Kerr* court defined "filed" to mean "to enter (e.g., a legal document) on public official record." *In re Kerr,* Nos. 06–12302, 06–12881, 2007 WL 2119291, at *3 (Bankr. W.D.Wash. July 18, 2007) (internal quotation marks omitted) (*quoting Webster's II New Riverside University Dictionary* 477 (1988)).

**7.** Section 342(d) provides that, where the presumption of abuse arises under § 707(b) in an

individual Chapter 7 case, "the clerk shall give written notice to all creditors not later than 10 days after the date of the *filing of the petition* that the presumption of abuse has arisen." 11 U.S.C.A. § 342(d) (West 2009) (emphasis added).

**8.** Section 707(b)(3) provides that, where the presumption of abuse in § 707(b) does not arise, the court should consider "whether the debtor *filed the petition* in bad faith" in determining whether to dismiss the debtor's case for abuse. 11 U.S.C.A. § 707(b)(3) (West 2009) (emphasis added).

**9.** Section 707(b)(4)(A) provides that the court may order debtor's counsel to reimburse the trustee for costs in prosecuting a § 707(b) motion if the court grants the motion and "finds that the action of the attorney for the debtor in *filing a case under this chapter* violated [Bankruptcy R]ule 9011." 11 U.S.C.A. § 707(b)(4)(A) (West 2009) (emphasis added).

707(c)(2) [10] and 707(c)(3) [11] to refer to the initial filing of a petition as evidence that Congress intended "filed" in § 707(b) to also refer to the initial filing. *In re Fox,* 370 B.R. 639, 644 (Bankr.D.N.J.2007).

In analyzing the statutory language of § 1328(f)(2), the Fourth Circuit addressed the meaning of "filed under" and found that it means something more than "under." *Bateman,* 515 F.3d at 278. Section 1328(f)(2) provides that "the court shall not grant a discharge ... if the debtor received a discharge in a case filed under chapter 13 of this title during the 2–year period preceding the date of such order." 11 U.S.C.A. § 1328(f)(2) (West 2009). In *Bateman,* the Chapter 13 trustee argued "that § 1328(f)(2) prohibits a discharge in a Chapter 13 case filed within two years of the *date of discharge* in the prior bankruptcy." *Id.* at 276 (emphasis added). The trustee's "discharge date to filing date" interpretation requires that the phrase "during the 2–year period preceding the date of such order" modify "received a discharge" instead of "filed under ..." *Id.* at 277. The Fourth Circuit, however, declined to accept the Chapter 13 trustee's argument. *Id.* at 278. The court found that the trustee's interpretation rendered "filed" superfluous, "believ[ing] that when Congress used the phrase 'filed under,' it meant 'filed under' and not just 'under.' " *Id.* It ultimately held "that under § 1328(f)[ (2) ], a debtor may not obtain a

Chapter 13 discharge in a bankruptcy filed within two years of *filing an earlier Chapter 13 petition* that resulted in a discharge." *Id.* at 280 (emphasis added). "[F]iled" in § 1328(f)(2) therefore refers to the initial act of filing a bankruptcy petition.[12]

■ In the case at bar, if "a case filed by an individual debtor under this chapter" in § 707(b)(1) means any individual Chapter 7 case, the word "filed" is superfluous. Both cases initially filed in, and those converted to, Chapter 7 are cases "under" that chapter. This Court may not, however, interpret "filed ... under" to mean simply "under." The term "filed" in § 707(b)(1) should be ascribed the same meaning that the Fourth Circuit gave it in § 1328(f)(2). The phrase "filed by an individual debtor under this chapter" in § 707(b)(1) therefore refers to an individual's initial filing of a Chapter 7 petition and does not include conversion to Chapter 7 from another chapter of the Bankruptcy Code.

## II. Literal Application of Section 707(b)(1) Does Not Produce an Absurd Result.

This Court next analyzes § 707(b)(1) within the overall framework of the Bankruptcy Code to determine whether literal application of the statute results in an

10. Section 707(c)(2) provides that the court may "dismiss a voluntary case *filed under this chapter*" upon the motion of a victim of a violent crime committed by the individual debtor. 11 U.S.C.A. § 707(c)(2) (West 2009) (emphasis added).

11. Section 707(c)(3) provides that "[t]he court may not dismiss a case under paragraph (2) if the debtor establishes by a preponderance of the evidence that the *filing of a case under this chapter* is necessary to satisfy a claim for a domestic support obligation." 11 U.S.C.A. § 707(c)(3) (West 2009) (emphasis added).

12. The majority court in *Willis* was "particularly persuaded by the apparently unanimous agreement among courts that, for purposes of 11 U.S.C. § 1328(f), the phrase 'fil[ed] under [c]hapter 7' encompasses cases converted from Chapter 13 to Chapter 7." *In re Willis,* No. 08–41820, 2009 WL 1563575, at *5 (Bankr.W.D.Mo. June 2, 2009). The court did not, however, address the Fourth Circuit's decision in *Bateman.*

outcome that is absurd. In examining the reach of § 707(b)(1), 11 U.S.C. § 348(a), which deals with the effects of conversion, must be considered. *See In re Kerr*, Nos. 06–12302, 06–12881, 2007 WL 2119291, at *3 (Bankr.W.D.Wash. July 18, 2007); *In re Perfetto*, 361 B.R. 27, 30 (Bankr.D.R.I. 2007).[13] Section 348(a) provides:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C.A. § 348(a) (West 2009).[14] Section 707 does not fall within the exceptions provided in § 348(b) and (c).

The majority courts read § 348(a) to say that it is "as if" a debtor that converted to Chapter 7 filed a Chapter 7 petition on the date of the filing of the initial Chapter 13. *Kerr*, 2007 WL 2119291, at *3; *see also Perfetto*, 361 B.R. at 31.[15] Thus, "Section 348(a) mandates that a case which has been converted to Chapter 7 from Chapter 13 is deemed to be filed under Chapter 7 on the date on which the Chapter 13 was filed." *Perfetto*, 361 B.R. at 31 (internal quotation marks and ellipses omitted) (*quoting In re Sours*, 350 B.R. 261, 268 (Bankr.E.D.Va.2006)). The majority courts hold that § 348(a) requires application of § 707(b) to converted cases and preparation of a Form 22A upon conversion. *See Perfetto*, 361 B.R. at 31; *In re Kellett*, 379 B.R. 332, 339 (Bankr.D.Or. 2007).

While § 348(a) is designed to address the effect of conversion on other Bank-

---

**13.** The *Bateman* court referenced two bankruptcy court decisions in the Fourth Circuit that address the impact of § 348(a) in the context of 11 U.S.C. § 1328(f), *In re Sours*, 350 B.R. 261, 269 (Bankr.E.D.Va.2006) and *In re Capers*, 347 B.R. 169, 171–172 (Bankr. D.S.C.2006). *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 278 n. 7 (4th Cir. 2008). In *Sours*, the court directly addressed the meaning of "filed under" in § 1328(f)(1). The facts reflect an initial Chapter 13 filing, conversion to Chapter 7, discharge in Chapter 7, and a subsequent Chapter 13 filing. *Sours*, 350 B.R. at 262–63. The U.S. Trustee argued that § 1328(f)(1) barred discharge using the "as if" argument of § 348(a). *Id.* at 268. The *Sours* court stated, "[I]t is clear to this court that a converted case relates back to the initial filing date for all purposes, including matters relating to discharge." *Id.*

**14.** As discussed in *Collier on Bankruptcy*, § 348(a) provides that while conversion of a case from one chapter to another constitutes an order for relief, conversion does not effect the dates of the filing of the petition, the commencement of the case or the order for relief, except as provided in subsections (b) and (c). 3 *Collier on Bankruptcy* ¶ 348.02 (15th ed. rev.2009). This means that, aside from the exceptions listed in subsections (b)

and (c), the sections of the Code that are keyed to the dates of the filing of the petition, the commencement of the case or the entry of the order for relief are unaffected by conversion. *Id.* Section 348(a) operates in conjunction with many other Code provisions, however, *Collier on Bankruptcy* never mentions § 707(b)(1) in discussing the operation of § 348(a). *See generally id.* at ¶¶ 348.02–348.07.

**15.** The *Kerr* court read § 348 to show Congress's

> clear intent ... to retain the original filing date as the date of the "filing of the petition," "commencement of the case" or "order for relief" except in the circumstances provided for in subsections (b) and (c), where these terms are instead deemed to refer to the conversion date. Because Section 707(b) is not mentioned in either subsection (b) or (c) of Section 348, it follows that the original filing date is retained upon conversion, but the case is otherwise treated as if the debtor had originally filed under the converted chapter.

*In re Kerr*, Nos. 06–12302, 06–12881, 2007 WL 2119291, at *3 (Bankr.W.D.Wash. July 18, 2007).

ruptcy Code provisions, the *Fox* court found that it does not necessarily lead to the conclusion that a converted case is "filed under" Chapter 7 as of the initial Chapter 13 filing date. *In re Fox*, 370 B.R. 639, 647 (Bankr.D.N.J.2007). Instead, such a converted case is "filed under" Chapter 13 and "converted to" Chapter 7. *In re Miller*, 381 B.R. 736, 741 (Bankr.W.D.Ark.2008). The Court finds this interpretation consistent with the plain meaning of § 707(b).

The minority courts also point out the statutory conflicts that arise if § 707(b) was applied to cases converted to Chapter 7. *See Fox*, 370 B.R. at 643–46. For example, 11 U.S.C. § 342(d),[16] which gives the clerk ten days from the petition date to provide notice to creditors that the presumption of abuse has arisen, cannot be applied because the initial filing date of the Chapter 13 petition is retained upon conversion to Chapter 7 and, in most cases, the ten-day period long expired before conversion. *See id.* at 645. Further, if conversion to Chapter 7 were to occur late in the Chapter 13 proceeding (perhaps as late as the final month of a sixty-month plan), the presumption of abuse determination would be made based on an outdated Form 22A. *See id.* at 643–44.[17] Contrary to the minority position, however, the *Kellett* court referenced the requirement in 11 U.S.C. § 704(b)(i)(A) that the U.S. Trustee make an abuse determination within ten days of the first meeting of the creditors to illustrate that § 707(b) does not distinguish between debtors that initially filed in and those that converted to Chapter 7. *In re Kellett*, 379 B.R. 332, 338 (Bankr.D.Or. 2007).[18]

---

**16.** *See supra* note 7.

**17.** Abuse is presumed if sixty times the net of the debtor's "current monthly income" reduced by his or her monthly expenses exceeds the lesser of twenty-five percent of the debtor's nonpriority unsecured claims (or $6,575.00, whichever is greater) or $10,950.00. 11 U.S.C.A. § 707(b)(2)(A)(i) (West 2009). A debtor's "current monthly income" is "the average monthly income from all sources that the debtor receives ... during the 6–month period ending on ... the last day of the calendar month immediately preceding the date of the commencement of the case." 11 U.S.C.A. § 101(10A)(A) (West 2009). As a conversion order does not change the commencement date of the case pursuant to § 348(a), the Means Test calculates the debtor's current monthly income as of the petition date.

The debtor's monthly expenses under the Means Test are determined "as in effect on the date of the order for relief." 11 U.S.C.A. § 707(b)(2)(A)(ii)(I) (West 2009). Section 301 provides that the filing of a voluntary petition commences a case and constitutes an order for relief. 11 U.S.C.A. § 301 (West 2009). For purposes of § 707, the date of the order for relief does not change upon conversion. *See* 11 U.S.C.A. § 348(b) (West 2009). Ex-

penses therefore also refer back to the petition date.

Section 707(b) thus "directs the disclosure of financial information for the six months before the filing, and not the date of conversion or the order for relief." *In re Fox*, 370 B.R. 639, 646 (Bankr.D.N.J.2007). A debtor in Chapter 13 for a period of sixty months could potentially convert to Chapter 7 in the final month. *In re Kellett*, 379 B.R. 332, 339 (Bankr.D.Or.2007). If § 707(b) applies to converted cases, the determination of abuse upon conversion could therefore be based on obsolete data. *Fox*, 370 B.R. at 643–44.

**18.** Section 704(b)(1)(A) provides that the U.S. Trustee shall review all materials filed by an individual Chapter 7 debtor and "not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b)." 11 U.S.C.A. § 704(b)(1) (West 2009). The *Kellett* court acknowledged the U.S. Trustee's argument that § 704(b)(1) does not "differentiat[e] between cases originally filed in chapter 7 and converted to chapter 7." *In re Kellett*, 379 B.R. 332, 338 (Bankr.D.Or.2007). Further, a § 341 meeting occurs after conversion to Chapter 7 and could be the date of the first meeting of creditors for purposes of

It appears to this Court that interpreting § 707(b) to include in its coverage only those cases originally filed under Chapter 7 leads to fewer conflicts within the Bankruptcy Code as a whole. Therefore, literal application of § 707(b)'s plain meaning does not produce an absurd result.

### III. Literal Application of Section 707(b)(1) is Not at Odds with Congressional Intent and the Purpose of BAPCPA.

Lastly, this Court considers whether application of § 707(b) to only cases originally filed in Chapter 7 is demonstrably at odds with the intent behind the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments to the Bankruptcy Code.[19] "In enacting BAPCPA, Congress ... expanded the bankruptcy courts' authority to dismiss petitions for abuse of the bankruptcy system, which likewise reflects congressional intent to curb bankruptcy abuse through the new act." *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 760 (5th Cir.2008). The Congressional Record is silent, however, as to whether Congress

intended that § 707(b) apply to all cases in Chapter 7, including those converted from other chapters.[20]

The majority courts find it "perversely inappropriate to deny abuse analysis of a debtor's chapter 7 case based upon the mere fact that it was converted to, rather than originally filed in chapter 7." *In re Kellett*, 379 B.R. 332, 339 (Bankr.D.Or. 2007); *see also In re Kerr*, Nos. 06–12302, 06–12881, 2007 WL 2119291, at *3 (Bankr. W.D.Wash. July 18, 2007).[21] Further, the majority fears that "[i]nterpreting § 707(b) as not applying in converted cases itself opens the door to abuses." *Kellett*, 379 B.R. at 338. If § 707(b) does not apply to converted cases, "[a] debtor seeking to avoid the chapter 7 'means test' and § 707(b) 'abuse' scrutiny could file a petition in chapter 13 and then turn around and convert the case to chapter 7." *Id.* This is the "abuse loophole."

The majority courts also acknowledge, however, the "absurd result in cases, for example, that convert to Chapter 7 many months (or years) after the petition date." *In re Perfetto*, 361 B.R. 27, 31 (Bankr.

§ 704(b)(1)(A). Neither the Debtors here nor any minority court addresses § 704(b)(1).

19. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23 (2005).

20. The House Judiciary Committee's Report on BAPCPA provides:

Needs-based reforms would amend section 707(b) of the Bankruptcy Code to permit a court, on its own motion, or on motion of the United States trustee, private trustee, bankruptcy administrator, or other party in interest (including a creditor), to dismiss a chapter 7 case for abuse if it was filed by an individual debtor whose debts are primarily consumer debts.

H.R.Rep. No. 109–31(I), at 12–13 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 99. This report does not indicate that finding § 707(b) does not apply to cases converted to Chapter

7 is demonstrably at odds with clearly expressed congressional intent.

21. The *Kerr* court cited *In re Morris*, 153 B.R. 559, 563–65 (Bankr.D.Or.1993), and *In re Traub*, 140 B.R. 286, 291 (Bankr.D.N.M. 1992), to establish that "[p]rior to BAPCPA, Section 707(b) was applied without question in cases converted from Chapter 13 to Chapter 7." *In re Kerr*, Nos. 06–12302, 06–12881, 2007 WL 2119291, at *3 (Bankr.W.D.Wash. July 18, 2007). The *Kerr* court cited these pre-BAPCPA cases because, "[d]espite the major amendments to Section 707(b) under BAPCPA, the phrase at issue was not changed." *Id.* In both cases, however, the courts applied § 707(b) scrutiny to cases converted to Chapter 7 without considering whether § 707(b) applied. *In re Kellett*, 379 B.R. 332, 338 (Bankr.D.Or.2007). This Court agrees with *Kellett* that "their relevance as authorities is limited." *Id.*

D.R.I.2007). They lament the "unfortunate and incongruous results" from making good faith debtors who fail to confirm a Chapter 13 plan face abuse scrutiny upon conversion to Chapter 7. *Kellett,* 379 B.R. at 339. To alleviate their concern, the majority holds that § 707(b) abuse scrutiny is discretionary and the requirement to file a Form 22A may be waived in appropriate circumstances. *See Perfetto,* 361 B.R. at 31; *Kellett,* 379 B.R. at 340 (*citing In re Edwards,* 367 B.R. 921 (Bankr. S.D.Ga.2007)).[22]

The minority rejects both the majority's conclusion that § 707(b) applies to all Chapter 7 cases and its concern over the abuse loophole.[23] The *Fox* court found no "support in the language of § 707(b)(1) to conclude that Congress intended to grant discretion to the bankruptcy courts, under a totality of the circumstances approach as promoted by the *Perfetto* court, to determine whether debtors converting to chapter 7 would be subject to the 'abuse' provisions under § 707(b)(1)." *In re Fox,* 370 B.R. 639, 648 (Bankr.D.N.J.2007). Further, the minority emphasizes that cases converted to Chapter 7 in bad faith may be dismissed without having to apply § 707(b) scrutiny. *Id.*[24]

■■■ This Court agrees with *Fox* that a plain reading of § 707(b) does not provide courts discretion over whether to apply abuse scrutiny. The Court next addresses whether a court may dismiss a case converted to Chapter 7 in bad faith by means other than § 707(b). A Chapter 13 debtor may convert a case to Chapter 7 at any time. *See* 11 U.S.C.A. § 1307(a) (West 2009).[25] This right to convert is

---

**22.** The *Perfetto* court determined that the propriety of applying the Means Test to converted cases may be "consider[ed] ... on an ad hoc basis, if and when [the cases] are filed, and only upon careful consideration of the totality of the circumstances in each case." *In re Perfetto,* 361 B.R. 27, 31 (Bankr.D.R.I.2007). The *Kellett* court relied on Rule 1007(b)(1) as authority for the proposition that "in appropriate circumstances ... the requirement to file a form B22A in a converted case can be waived." *In re Kellett,* 379 B.R. 332, 340 (Bankr.D.Or.2007) (*citing In re Edwards,* 367 B.R. 921 (Bankr.S.D.Ga.2007)). Rule 1007(b)(1) directs debtors to file the prescribed bankruptcy schedules and statements unless the court orders otherwise. *See* Fed. R. Bankr.P. 1007(b)(1).

**23.** The *Ryder* court had "difficulty accepting the view that 'common sense' dictates that a debtor who, in good faith, fails in chapter 13 must automatically be means tested upon a conversion to chapter 7 to see if the debtor should be presumed to be an abuser whose case belongs in chapter 13." *In re Ryder,* No. 07–40192, 2008 WL 3845246, at *1 n. 2 (Bankr.N.D.Cal. Aug.18, 2008); *see also In re Miller,* 381 B.R. 736, 741 (Bankr.W.D.Ark. 2008). The *Willis* court, however, cast doubt upon the minority courts' concerns, noting

that two "release valves" exist for good faith debtors converting from Chapter 13 to Chapter 7: "1) the UST can exercise its discretion under § 704(b)(2) not to pursue dismissal, or 2) the debtor may rebut the presumption by showing the existence of special circumstances." *In re Willis,* No. 08–41820, 2009 WL 1563575, at *6 (Bankr.W.D.Mo. June 2, 2009).

**24.** The *Fox* court noted that "[t]here are separate provisions in the Code for 'catching' bad-faith filers and, as the [Supreme Court's decision in *Marrama* ] instructed, there is ample authority for the dismissal of cases of debtors who convert their cases in bad faith." *In re Fox,* 370 B.R. 639, 648 (Bankr.D.N.J.2007) (*citing Marrama v. Citizens Bank,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (holding that a bankruptcy court may deny a § 706 motion to convert pursuant to its authority under § 105(a) 'to prevent an abuse of process')).

**25.** Section 1307(a) provides that a "debtor may convert a case under this chapter to a case under chapter 7 of this title at any time." 11 U.S.C.A. § 1307(a) (West 2009). Similarly, a Chapter 11 debtor may convert its case to Chapter 7 at any time, subject to three enumerated exceptions. *Id.* § 1112(a).

"unqualified and may not be waived." 8 *Collier on Bankruptcy* ¶ 1307.01 (15th ed. rev.2009) (*citing* H.R.Rep. No. 595, 95th Cong. 1st Sess. 428 (1977), 1978 U.S.C.C.A.N. 5963, 6383). A debtor that files under Chapter 13 with the intent to convert to Chapter 7, and thereby avoid § 707(b) scrutiny, has the absolute right to do so. The bankruptcy court may, however, dismiss a debtor that converted to Chapter 7 for bad faith pursuant to § 707(a). *See In re Miller*, 381 B.R. 736, 741 (Bankr.W.D.Ark.2008) ("Restricting the presumption of abuse test to cases filed under chapter 7 still allows the unfortunate chapter 13 debtor who is precluded from confirming a chapter 13 plan access to protection under the code, without diminishing the United States Trustee's review of the case under § 707(a).").

 Section 707(a) authorizes bankruptcy courts to dismiss Chapter 7 cases for cause after notice and a hearing. 11 U.S.C.A. § 707(a) (West 2009).[26] Sections 707(a) and (b) are complementary, as "subsection (a) governs the dismissal of all bankruptcy filings, when adequate 'cause' has been shown, and subsection (b) governs the dismissal of only those bankruptcy filings involving primarily consumer debts, when granting relief would be an 'abuse' of Chapter 7." *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.2d 364, 369 (3d Cir.2007). The enumerated causes for dismissal under § 707(a) include the debtor's unreasonable delay, nonpayment of bankruptcy fees, and failure to timely file bankruptcy schedules and other required information. 11 U.S.C.A. § 707(a) (West 2009). These grounds for dismissal, however, are non-exclusive. The debtor's lack of good faith is also sufficient cause for dismissal. *Perlin*, 497 F.3d at 369 (*citing Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000)).[27] The decision to dismiss a bankruptcy petition under § 707(a) lies within the sound discretion of the bankruptcy court. *Tamecki*, 229 F.3d at 207; *Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 433–34 (8th Cir.BAP2000); *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir.1991); *Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1062 (5th Cir.1988); *McDow v. Smith*, 295 B.R. 69, 75 (E.D.Va. 2003).

Holding that § 707(b) applies only to cases filed in Chapter 7 does not contravene expressed congressional intent and is

---

**26.** Section 707(a) provides:
> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.
>
> 11 U.S.C.A. § 707(a) (West 2009).

**27.** Pre–BAPCPA opinions differ as to whether bad faith is proper cause for dismissal pursuant to § 707(a). *Compare Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126–27 (6th Cir.1991) (holding that a lack of good faith is cause for dismissal under § 707(a)), *and McDow v. Smith*, 295 B.R. 69, 74 (E.D.Va.2003) (same), *with Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir. 2000) (holding that bad faith is not cause for dismissal under § 707(a) because Chapter 7 has no good faith requirement and broadly construing § 707(a) would render § 707(b) unnecessary), *and Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir.1994) (discarding a general bad faith inquiry and allowing dismissal only where the debtor's actions amount "to extreme misconduct falling outside the purview of more specific Code provisions.").

consistent with the purpose of BAPCPA. The Bankruptcy Code does not give courts discretion over whether to apply § 707(b) scrutiny, and the fear of abusive filings "does not justify departure from the statutory language" of § 707(b)(1). *In re Ryder*, No. 07–40192, 2008 WL 3845246, at *2 (Bankr.N.D.Cal. Aug.18, 2008). Section 707(a), however, provides bankruptcy courts the necessary authority to dismiss abusive filers that seek to avoid the Means Test.

### *CONCLUSION*

Based on the foregoing, this Court holds that the Plain Meaning Rule dictates that § 707(b) apply only to cases filed under Chapter 7 and that cases converted to Chapter 7 from another chapter of the Bankruptcy Code do not fall within the scope of § 707(b). Literal application of the language does not result in an outcome that can truly be characterized as absurd, and this statutory interpretation does not produce an outcome that is demonstrably at odds with clearly expressed congressional intent. Accordingly, it is

### ORDERED:

That the Debtors' Motion for Summary Judgment is hereby **GRANTED.**

Copies of this Decision and Order are directed to be sent to counsel for the Debtors, William J. Charboneau, Esq.; to Joseph A. Guzinski, Esq., Office of the United States Trustee; and to the Chapter 7 Trustee, Roy V. Creasy, Esq.